# In the United States Court of Federal Claims

No. 17-1528T
(Filed: July 31, 2018)

| | |
|---|---|
| CHARLESTON AREA MEDICAL CENTER, INC. *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Keywords: Tax Refund; Overpayment; Interest; Non-Profit Corporation; 26 U.S.C. § 6621; FICA. |

*Thomas D. Sykes*, The Law Offices of Thomas D. Sykes LLC, Lake Forest, IL, for Plaintiffs.

*Miranda Bureau*, Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., with whom were *Mary M. Abate*, Assistant Chief, *David I. Pincus*, Chief, Court of Federal Claims Section, and *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiffs, the Charleston Area Medical Center (CAMC) and the CAMC Health Education and Research Institute (CHERI), are non-profit corporations that received refunds of tax overpayments from the Internal Revenue Service (IRS). The IRS computed the interest due to CAMC and CHERI on the basis of the rate specified for corporations at § 6621(a)(1) of the Internal Revenue Code (I.R.C.), rather than the higher rate specified for other taxpayers at § 6621(a)(1)(B). According to Plaintiffs, the IRS should have used the higher interest rate because the word "corporation" in I.R.C. § 6621(a)(1) does not include non-profit entities like CAMC and CHERI. They claim that they are therefore due an additional interest payment of almost $2 million.

The government has filed a motion for judgment on the pleadings, contending that, as a matter of law, non-profit corporations like CAMC and CHERI are entitled to interest only at the rate specified for corporations at § 6621(a)(1). CAMC and CHERI, in turn, oppose the government's motion and have filed their own cross-motion for summary judgment.

For the reasons set forth below, this Court agrees with the government that Plaintiffs' entitlement to interest on their overpayments was appropriately calculated on

the basis of the rate applicable to corporations. Accordingly, the government's motion for judgment on the pleadings is **GRANTED** and Plaintiffs' cross-motion for summary judgment is **DENIED**.

## BACKGROUND

CAMC and CHERI are non-profit corporations organized in the state of West Virginia. Compl. ¶¶ 2–3, ECF No. 1. Although they qualify as tax-exempt organizations under I.R.C. § 501(a) and 501(c)(3) and are generally exempt from having to pay federal income tax, Plaintiffs are still required to pay the taxes imposed on employers under the Federal Insurance Contributions Act (FICA), I.R.C. §§ 3101–28. FICA requires both employers and their employees to pay taxes on "wages" from "employment" in order to fund the benefits available under the Social Security Act and Medicare. See id. §§ 3101, 3111; United States v. Quality Stores, Inc., 134 S. Ct. 1395, 1399 (2014).

On March 2, 2010, the IRS administratively determined that certain medical residents whom Plaintiffs had treated as employees were covered by the "student exception" to FICA set forth at I.R.C. § 3121(b)(10), for tax periods ending before April 1, 2005. See Compl. ¶ 11; Compl. Ex. A at 1, ECF No. 1-2. As a result of this determination, Plaintiffs received refunds from the IRS of overpaid employer-portion FICA tax attributable to medical residents, plus over $2 million in overpayment interest collectively. The interest was computed on the basis of the corporate rate specified at I.R.C. § 6621(a)(1)(A)–(B), which provides that that "[t]he overpayment rate established under this section shall be the sum of . . . the Federal short-term rate . . . plus . . . 3 percentage points (2 percentage points in the case of a corporation)."

CAMC and CHERI filed a class action complaint in this court on October 16, 2017. They seek to represent both themselves and other similarly situated non-profit corporations that also received tax refunds based on the IRS's March 2, 2010 administrative determination. In their complaint, Plaintiffs "seek to recover the additional statutory interest that should have been, but was not, paid or credited by the IRS to the Named Plaintiffs"; as well as "certification of a class . . . consisting of approximately 285 other similarly situated taxpayers that should have been paid or credited with additional statutory interest -- paid at the higher, standard rate -- but were not so paid or credited." Compl. ¶ 1.

On March 26, 2018, the government filed a motion for judgment on the pleadings. ECF No. 16. Plaintiffs filed their response and a cross-motion for summary judgment on April 19, 2018. ECF No. 17. Thereafter, on April 30, 2018, Plaintiffs filed a motion for class certification. ECF No. 18. On June 29, 2018, the Court granted the government's motion for an enlargement of time to respond to the motion for class certification until after the Court's disposition of the pending dispositive motions. See ECF No. 28.

The Court originally scheduled oral argument on the cross-motions to be held on August 21, 2018. ECF No. 29. After further consideration of the briefs in the case, the Court cancelled the oral argument, concluding that it was unnecessary. ECF No. 30.

**DISCUSSION**

## I.     Jurisdiction

The Tucker Act grants the Court of Federal Claims jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act thus waives the sovereign immunity of the United States to allow a suit for money damages. United States v. Mitchell, 463 U.S. 206, 212 (1983).  The Tucker Act does not, however, confer any substantive rights on a plaintiff. United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff cannot invoke the court's Tucker Act jurisdiction unless he or she can identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation, or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008); see also Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1076 (Fed. Cir. 1994).

In this case, Plaintiffs' claim for money damages is based on I.R.C. § 6621(a)(1), which specifies the interest rate that shall apply to tax refunds. Because this statutory provision is mandatory and requires the payment of interest in tax overpayment cases, this Court has jurisdiction over Plaintiffs' claims under the Tucker Act.[1]

## II.    Standards for Motions for Judgment on the Pleadings and for Summary Judgment

The government has filed a motion for judgment on the pleadings in accordance with Rule 12(c) of the Rules of the Court of Federal Claims (RCFC). Plaintiffs have, in turn, filed a cross-motion for summary judgment in accordance with RCFC 56.

When deciding a motion for judgment on the pleadings, the court may review "the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which . . . court will take judicial notice." 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004). When a defendant moves

---

[1] Plaintiffs' suit does not seek the recovery of taxes alleged to have been wrongfully paid; rather it seeks recovery of additional interest on the tax refund the IRS has found Plaintiffs entitled to receive. The administrative exhaustion requirement of I.R.C. § 7422(a) is therefore inapplicable. See I.R.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.").

for judgment on the pleadings, the court "must assume each well-pled factual allegation to be true and indulge in all reasonable inferences in favor of the nonmovant." <u>Owen v. United States</u>, 851 F.2d 1404, 1407 (Fed. Cir. 1988). A grant of "[j]udgment on the pleadings is appropriate where there are no material facts in dispute and the [moving] party is entitled to judgment as a matter of law." <u>Forest Labs., Inc. v. United States</u>, 476 F.3d 877, 881 (Fed. Cir. 2007) (citing <u>N.Z. Lamb Co. v. United States</u>, 40 F.3d 377, 380 (Fed. Cir. 1994)).

Summary judgment is similarly appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>see also</u> RCFC 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248. An issue is genuine if it "may reasonably be resolved in favor of either party." <u>Id.</u> at 250.

The parties' motions place a pure question of statutory interpretation before the Court. Because there are no material facts in dispute, and because the case presents only legal questions, it is appropriate for disposition either through judgment on the pleadings or summary judgment.

## III.    Merits

The sole issue before the Court is whether non-profit entities like CAMC and CHERI, which are incorporated under the provisions of state law, are "corporation[s]" for purposes of I.R.C. § 6621(a)(1)'s interest-calculation provision. This is not an issue of first impression. The Second, Sixth, and Seventh Circuits, as well as the United States District Court for the District of Kansas, have all held—in agreement with the government's position in this case—that both non-profit and for-profit entities that are incorporated under state law are "corporations" for purposes of § 6621(a); and, thus, that non-profit corporations are paid interest at the lower corporate interest rate when they receive tax refunds. <u>See</u> <u>Med. Coll. of Wis. Affiliated Hosps., Inc. v. United States</u>, 854 F.3d 930, 933 (7th Cir. 2017); <u>United States v. Detroit Med. Ctr.</u>, 833 F.3d 671, 674 (6th Cir. 2016); <u>Maimonides Med. Ctr. v. United States</u>, 809 F.3d 85, 87 (2d Cir. 2015); <u>Wichita Ctr. for Graduate Med. Educ. v. United States</u>, No. 16-1054-JTM, 2017 WL 6055708 (D. Kan. Dec. 7, 2017), <u>appeal docketed</u>, No. 18-3016 (10th Cir. Feb. 2, 2018). This Court now joins that unanimous consensus.

The interpretation of a statute begins with its language. <u>N.Y. & Presbyterian Hosp. v. United States</u>, 881 F.3d 877, 882 (Fed. Cir. 2018) (citing <u>BedRoc Ltd. v. United States</u>, 541 U.S. 176, 183 (2004) (observing that the court's inquiry "begins with the statutory text[] and ends there as well if the text is unambiguous")). Here, § 6611 of the Internal Revenue Code states, in pertinent part, that interest is payable on overpayments of tax "at the overpayment rate established under section 6621." I.R.C. § 6611. Section 6621(a)(1)(A)–(B), in turn, provides that "[t]he overpayment rate established under this section shall be the sum of . . . the Federal short-term rate determined under subsection (b), plus . . . 3 percentage points (2 percentage points in the case of a corporation)." It is

clear for several reasons that the term "corporation" in this provision includes not-for-profit corporations like CAMC and CHERI.

First of all, as the Second Circuit observed in Maimonides Medical Center, "the word 'corporation,' standing alone, ordinarily refers to both for-profit and nonprofit entities without distinction." 809 F.3d at 87. In fact, "the common law understanding of 'corporation' has consistently included nonprofit corporations." Detroit Med. Ctr., 833 F.3d at 675.

Similarly, the dictionary definition of "corporation" does not depend upon an entity's for-profit or non-profit status. Maimonides Med. Cetr., 809 F.3d at 87 (dictionary definition of "corporation" is "an entity recognized by law as constituted by one or more persons and as having various rights and duties together with the capacity of succession" (quoting Webster's 3d New Int'l Dictionary 510 (1993)); see also Oxford English Dictionary (2d ed. online version 2018), http://www.oed.com/view/Entry/41833? redirectedFrom=corporation#eid ("corporation" is "an artificial person created by royal charter, prescription, or act of the legislature, and having authority to preserve certain rights in perpetual succession")); cf. Xianli Zhang v. United States, 640 F.3d 1358, 1364 (Fed. Cir. 2011) (noting that "[d]ictionary definitions can elucidate the ordinary meaning of statutory terms"). Thus, CAMC and CHERI are corporations under the common or ordinary meaning of the term.

Second, the meaning of "corporation" set forth in the I.R.C.'s "definitional" section, I.R.C. § 7701, does not alter the ordinary definition of the term to exclude non-profit entities incorporated under state law. Thus, § 7701 states broadly that "[t]he term 'corporation' includes associations, joint-stock companies, and insurance companies." Id. at § 7701(a)(3). As the Second Circuit has observed, the use of this non-exhaustive list to define the term "strongly suggests that, at a minimum, all entities covered by the core definition of 'corporation,'" such as CAMC and CHERI, "are also included." See Maimonides Med. Ctr., 809 F.3d at 88 (finding that § 7701 "offers no hint that Congress intended to contract the ordinary meaning of the term in any way" (emphasis in original)); see also Detroit Med. Ctr., 833 F.3d at 674 (noting that "[i]n the absence of any statutory definition to the contrary, courts assume that Congress adopts the customary meaning of the terms it uses" (citing Morissette v. United States, 342 U.S. 246, 263 (1952))).[2]

---

[2] In fact, as several courts of appeals have concluded, the definition of "corporation" contained at § 7701(a)(3) "serve[s] to expand the federal tax law meaning of 'corporation' beyond entities that would ordinarily fall under that term." Maimonides Med. Ctr., 809 F.3d at 88 (emphasis in original); see also United States v. Empey, 406 F.2d 157, 165 (10th Cir. 1969) (observing that "the statutory definition of the term 'corporation' extends, rather than limits, the ordinary meaning thereof," such that it "[i]ncludes 'associations, joint-stock companies, and insurance companies,' as well as entities organized as corporations" (quoting I.R.C. § 7701(a)(3)).

Third, a textual analysis of the use of the word "corporation" within the interest-calculation provision itself also reveals that the word encompasses both non-profit and for-profit entities. Thus, I.R.C. § 6621(a)(1) addresses the interest rate ordinarily applicable to the overpayment of taxes, while § 6621(a)(2) governs the rate applicable to the underpayment of taxes. Further, as noted above, § 6621(a)(1)(B) states that for the overpayment of taxes, the interest rate shall be the Federal short term rate increased by "3 percentage points (2 percentage points in the case of a corporation)." I.R.C. § 6621(c) then provides a special rule that "[i]ncrease[s] [the] underpayment rate for large corporate underpayments." Id. § 6621(c)(1) (stating that "[i]n general" a 5% rather than 3% interest rate applies to "large corporate underpayments"). And subsection (c)(3)(A) specifies that for purposes of this special rule, "[t]he term 'large corporate underpayment' means any underpayment of a tax by a C corporation for any taxable period if the amount of such underpayment for such period exceeds $100,000." Id. § 6621(c)(3)(A) (emphasis added).

As is readily apparent, although Congress qualified the word corporation in subsection (c)(3)(A) by adding the modifier "C," it did not qualify the word corporation at all in subsection (a)(1). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." See Russello v. United States, 464 U.S. 16, 23 (1983).

Finally, "[p]roof that Congress used the generic definition of 'corporation' in § 6621—applicable to for-profit and not-for-profit entities alike—appears throughout the Internal Revenue Code." Detroit Med. Ctr., 833 F.3d at 676. For one thing, as the Sixth Circuit explained, the I.R.C. addresses "three basic types of corporations . . . : nonprofit corporations covered by subchapter F; certain for-profit corporations covered by subchapter C; and certain for-profit corporations covered by subchapter S." Id. "In all three places," the court of appeals observed, "the drafters of the Code called these distinct entities 'corporations.'" Id.

Moreover, there are numerous provisions throughout the Code that necessarily imply that when Congress used the word "corporation" without any modifier, it intended that the word would encompass both non-profit and for-profit entities. See Maimonides Med. Ctr., 809 F.3d at 88–89 (providing examples). For instance, I.R.C. § 501 exempts from income taxes those "[c]orporations" that are "organized and operated exclusively for . . . charitable . . . purposes." See id. § 501(a), (c)(3). Similarly, I.R.C. § 1381(a)(2)(A) states that the rules governing the tax treatment of "cooperatives" apply to, inter alia, "any corporation operating on a cooperative basis other than an organization . . . which is exempt from tax under this chapter." (emphasis added). As the Second Circuit has observed, "[t]he carve-out for tax-exempt organizations would not have been necessary if they were already excluded from the definition of 'corporation.'" Maimonides Med. Ctr., 809 F.3d at 89; see also I.R.C. § 1504(b)(1) (addressing affiliated groups of corporations, and defining "includible corporation" to include "any corporation except," inter alia, "[c]orporations exempt from taxation under section 501").

In short, common usage, the I.R.C.'s own definition, the structure of the specific statutory provision at hand, and the use of the term in the I.R.C. as a whole all indicate

that the term "corporation" in I.R.C. § 6621 plainly encompasses both for-profit and not-for-profit corporations.

Plaintiffs' argument for a different interpretation of the statute largely relies upon a now-superseded set of Treasury Regulations, known as the "Kintner Regulations." See Pls.' Opp'n to Def.'s Mot. for J. on the Pleadings[] & Pls.' Mot. for Summ. J. & Supp. Brief (Pls.' Mot.) at 9–22, ECF No. 17. The Kintner regulations formerly set forth the IRS's views on the "essential characteristics of a corporate entity." Littriello v. United States, 484 F.3d 372, 375 (6th Cir. 2007); see also United States v. Kintner, 216 F.2d 418, 423 (9th Cir. 1954). The Court finds this argument unavailing for at least three reasons.

In the first place, because the statutory language is clear, the Court does not look to regulatory sources to derive its meaning. See Chevron, U.S.A, Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984) (where a statute's meaning is clear from its plain language, "that is the end of the matter"); see also Maimonides Med. Ctr., 809 F.3d at 88 n.2 (declining to address arguments based on regulatory language in light of the court's conclusion that plaintiffs like CAMC and CHERI are "unambiguously 'corporation[s]' under the statutory definition").

Second, the Kintner Regulations upon which Plaintiffs rely were repealed and superseded in 1996 by the modern "check the box" regulations, and those regulations harmonize with the foregoing interpretation of the statute. See Treas. Reg. §§ 301.7701–1 to 301.7701–3; Littriello, 484 F.3d at 375–76. Thus, Treasury's current regulations provide that the term "corporation" includes business entities that are organized under a state statute that "describes or refers to the entity as incorporated or as a corporation." Treas. Reg. § 301.7701-2(a), (b)(1). Both CAMC and CHERI fall within this regulatory definition.

Finally, and in any event, the now-superseded Kintner Regulations were "developed to aid in classifying business associations that were not incorporated under state incorporation statutes but that had certain characteristics common to corporations and were thus subject to taxation as corporations under the federal tax code." Littriello, 484 F.3d at 375 (emphasis added); see also Part 301—Procedure and Administration, 25 Fed. Reg. 10,928, 10,929 (Nov. 17, 1960) (text of former Treas. Reg. § 301.7701–1(c) noting that the "term 'corporation' is not limited to the artificial entity usually known as a corporation but also includes an association, a trust classed as an association because of its nature or its activities, a joint stock company and an insurance company"). Thus, because CAMC and CHERI are both incorporated under state law, the provisions of the Kintner Regulations to which Plaintiffs refer—which were intended to be used to determine whether "associations" not incorporated under state law should nonetheless be treated as corporations for purposes of federal tax law—would have been inapplicable if they remained in effect. Plaintiffs' regulatory argument thus fails even on its own terms.[3]

---

[3] As the Sixth Circuit observed in Littriello, the IRS abandoned the approach it took under the Kintner Regulations because it was inadequate to deal with hybrid business

Finally, Plaintiffs also contend that the position the IRS is taking in this case is inconsistent with IRS Notice 2018-37, which was recently issued in connection with the Tax Cuts and Jobs Act, Pub. L. No. 115-97. See Pls.' Mot. at 7–8. In that Notice, the IRS announced its intent to issue regulations that will provide that S corporations will be subject to certain unfavorable tax treatment under the new law, notwithstanding that the underlying statute excepts all corporations from such treatment. See Press Release, IRS, IRS Plans to Issue Regulations Clarifying Limitations on Carried Interest (Mar. 1, 2018), https://www.irs.gov/newsroom/irs-plans-to-issue-regulations-clarifying-limitations-on-carried-interest. "The Notice," Plaintiffs note, "takes this position even though the same enactment elsewhere uses the term 'S corporation' and 'C corporation.'" Pls.' Mot. at 8.

The Court declines to express any views on whether the approach of some as-yet-to-be issued regulations is inconsistent with the government's arguments in this case. Whatever position the IRS ultimately may take in its not-yet-promulgated regulations implementing this particular aspect of the new tax law, this Court's conclusion regarding the meaning of the word corporation in § 6621 as applied to CAMC and CHERI remains the same—i.e., that CAMC and CHERI are corporations within the plain meaning of the statute and under the regulations currently in effect. Accordingly, it joins the previous courts that have addressed the issue in holding that the word "corporation" as employed in § 6621(a) encompasses both non-profit and for-profit entities.[4]

## CONCLUSION

On the basis of the foregoing, the government's motion for judgment on the pleadings is **GRANTED**, and Plaintiffs' cross-motion for summary judgment is **DENIED**. Plaintiffs' motion for class certification is also **DENIED** as moot. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

---

entities such as limited liability companies that that had been developed under state law in the latter part of the last century. 484 F.3d at 375–76. As noted above, the superseding "check the box regulations" provide that the term "corporation" includes business entities that were organized under a state statute that "describes or refers to the entity as incorporated or as a corporation." Treas. Reg. § 301.7701-2(a), (b)(1). They further provide that business entities that are not classified as corporations under subsection (b)(1) (or under § 301.7701–2(b)(3)–(8)) can elect how they wish to be classified for federal tax purposes. Beyond that, they allow unincorporated business associations to elect to be treated as corporations (i.e., to "check-the-box"), or, in the absence of such an election, to be treated as they were before the regulations became effective. See McNamee v. Dep't of Treasury, 488 F.3d 100, 105–09 (2d. Cir. 2007).

[4] In their briefs, Plaintiffs make a series of miscellaneous subsidiary arguments, many of which have been previously rejected by the other courts that have addressed the question of statutory interpretation at issue in this case, and the remainder of which are insufficient to persuade the Court to depart from the plain meaning of the statutory language.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge